Curtis B. Coulter (Nevada Bar No. 3034)
**LAW OFFICES OF CURTIS B. COULTER, P.C.**
403 Hill Street, Reno, Nevada 89501
Telephone: (775) 324.3380
Facsimile: (775) 324.3381
ccoulter@coulterlaw.net
*Counsel for Plaintiff Louisiana Municipal*
*Police Employees' Retirement System and Proposed*
*Liaison Counsel*

*(Additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| NASSER MORADI, RICHARD BUCKMAN, DOUGLAS TOMLINSON, and MATT ABBEDUTO, derivatively on behalf of LAS VEGAS SANDS CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SHELDON GARY ADELSON, MICHAEL A. LEVEN, CHARLES D. FORMAN, IRWIN A. SIEGEL, IRWIN CHAFETZ, GEORGE P. KOO, JEFFREY H. SCHWARTZ, JASON N. ADER, <br><br> Defendants, <br><br> and <br><br> LAS VEGAS SANDS CORP., <br><br> Nominal Defendant. | Case No. 2:11-cv-00490-GMN-(RJJ) <br><br> Action Filed:  April 1, 2011 |

*(Captions continued on following page)*

**PLAINTIFF LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO CONSOLIDATE RELATED DERIVATIVE ACTIONS AND TO APPOINT LEAD PLAINTIFF AND LEAD AND LIAISON COUNSEL, AND IN OPPOSITION TO THE MOTION OF PLAINTIFFS NASSER MORADI, RICHARD BUCKMAN, DOUGLAS TOMLINSON, AND MATT ABBEDUTO FOR CONSOLIDATION AND APPOINTMENT OF LEAD COUNSEL AND LIAISON COUNSEL**

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, derivatively on behalf of LAS VEGAS SANDS CORP., | Case No. 2:11-cv-00595-RLH-(GWF)<br><br>Action Filed:  April 18, 2011 |
| Plaintiff, | |
| v. | |
| SHELDON G. ADELSON, MICHAEL A. LEVEN, IRWIN CHAFETZ, CHARLES D. FORMAN, JEFFREY H. SCHWARTZ, IRWIN A. SIEGEL, JASON N. ADER, GEORGE P. KOO, WING T. CHAO, | |
| Defendants, | |
| and | |
| LAS VEGAS SANDS CORP., | |
| Nominal Defendant. | |
| JOHN ZAREMBA, derivatively on behalf of LAS VEGAS SANDS CORP., | Case 2:11-cv-00636-RLH-(GWF)<br><br>Action Filed:  April 22, 2011 |
| Plaintiff, | |
| v. | |
| SHELDON G. ADELSON, MICHAEL A. LEVEN, IRWIN A. SIEGEL, JEFFREY H. SCHWARTZ, JASON N. ADER, CHARLES D. FORMAN, IRWIN CHAFETZ, GEORGE P. KOO, and WING T. CHAO, | |
| Defendants, | |
| and | |
| LAS VEGAS SANDS CORP., | |
| Nominal Defendant. | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 4

    A.  This Court Should Appoint LAMPERS as Lead Plaintiff and Approve its
    Selection of Counsel as Lead and Liaison Counsel ................................................. 4

        1.  LAMPERS Is an Institutional Investor with the Largest Economic
        Interest in LVS and Has Otherwise Demonstrated Its Ability and
        Willingness to Actively Oversee the Prosecution of this Litigation........... 7

        2.  LAMPERS' Complaint Is Superior to the *Moradi* Complaint ................. 10

        3.  As Lead Counsel, Kessler Topaz Will Provide LVS With the Highest
        Quality Legal Representation .................................................................. 14

III.  CONCLUSION................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) ...................................................................................................11

*Berkowitz v. Fodor,*
   No. C 06-05353 JW, 2006 WL 3365587 (N.D. Cal. Nov. 20, 2006) .........................................5

*Brown v. Kelly,*
   No. C 06-4671, 2006 WL 3411868 (N.D. Cal. Nov. 27, 2006).................................................5

*Cohen v. Beneficial Indus. Loan Corp.,*
   337 U.S. 541 (1949)...................................................................................................................1

*Dollens v. Zionts,*
   No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ........................ *passim*

*Doyle v. Rich,*
   No. 5570, 1978 WL 22021 (Del. Ch. June 21, 1978)..............................................................12

*Hacker, v. Peterschmidt,*
   No. C 06-03468, 2006 WL 2925683 (N.D. Cal. Oct. 12, 2006)................................................5

*Horn v. Raines,*
   227 F.R.D. 1 (D.D.C. 2005)......................................................................................................7

*In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.,*
   258 F.R.D. 260 (S.D.N.Y. 2009) ....................................................................................5, 9, 13

*In re Comverse Tech. Inc. Derivative Litig.,*
   No. 06-cv-1849 (NGG) (RER), 2006 WL 3761986 (E.D.N.Y. Sept. 22, 2006) ....................13

*In re Del Monte Foods Co. S'holder Litig.,*
   No. 6027-VCL, 2010 WL 5550677 (Del. Ch. Dec. 31, 2010)......................................... *passim*

*In re McDermott Int'l, Inc. Sec. Litig.,*
   No. 08 Civ. 9943(DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) .........................................9

*In re Tarragon Corp. Sec. Litig.,*
   No. 07 Civ. 7972(PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ....................................9

*In re Topps Co. S'holders Litig.,*
   924 A.2d 951 (Del. Ch. 2007)................................................................................................12

*King v. Verifone Holdings, Inc.,*
    12 A.3d 1140 (Del. 2011) ..................................................................................6, 12

*Sexton v. Van Stolk,*
    No. C 07-1782(RSL), 2008 WL 1733242 (W.D. Wash. April 10, 2008)..................................5

*Shoen v. SAC Holdings Corp.,*
    137 P.3d 1171 (Nev. 2006) ........................................................................................4

*TCW Tech. Ltd. P'ship v. Intermedia Commc'n, Inc.,*
    No. 18336, 2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000) .................................... *passim*

*Wiehl v. Eon Labs,*
    No. 1116-N, 2005 Del. Ch. LEXIS 40 (Del. Ch. Mar. 22, 2005).....................................2, 4, 7

Plaintiff Louisiana Municipal Police Employees' Retirement System ("LAMPERS") submits this memorandum of law in further support of its Motion to Consolidate Related Derivative Actions and to Appoint Lead Plaintiff and Lead and Liaison Counsel ("LAMPERS' Leadership Motion"), and in opposition to Nasser Moradi, Richard Buckman, Douglas Tomlinson, and Matt Abbeduto's (the "*Moradi* Plaintiffs") Motion for Consolidation and Appointment of Lead and Liaison Counsel. LAMPERS and the *Moradi* Plaintiffs agree that the above-captioned related shareholder derivative actions should be consolidated pursuant to Rule 42(a).[1] LAMPERS opposes the *Moradi* Plaintiffs' Motion to the extent that they request that this Court appoint the Kendall Law Group, LLP ("Kendall Law Group") as Lead Counsel and Reisman Sorokac as Liaison Counsel.[2]

## I.    INTRODUCTION

As the Supreme Court recognized in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), a plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.*  In light of the foregoing, courts routinely look to the wisdom behind the reasons for the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA") when appointing a lead plaintiff in derivative cases – to appoint proven fiduciaries, such as a large institutions, as lead plaintiff – in order to select a representative plaintiff with a significant stake in the outcome of the litigation to prevent lawyer-driven litigation. *See, e.g., Dollens v. Zionts,* No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966, at *5 (N.D. Ill. Dec. 4, 2001) (applying the provisions of the PSLRA when selecting a lead plaintiff

---

[1] Additionally, on June 3, 2011, Counsel for Las Vegas Sands Corp. ("LVS or the "Company") and several of the individually named defendants filed a response to LAMPERS' Leadership Motion stating that they would not oppose the consolidation of above-captioned actions.

[2] As discussed herein, the *Moradi* Plaintiffs also request that, in the alternative, the Court appoint them as Lead Plaintiffs. LAMPERS also opposes their request in this opposition.

and explaining that the framers of the PSLRA envisioned that institutions and individuals with a significant financial interest in the defendant company should lead the litigation, taking it away from figurehead plaintiffs who exercise no meaningful supervision of litigation); *see also In re Del Monte Foods Co. S'holder Litig.*, No. 6027-VCL, 2010 WL 5550677, at \*\*4-6 (Del. Ch. Dec. 31, 2010) (explaining the importance of appointing a shareholder with a large stake to ensure that its counsel is adequately monitored thereby reducing the problem of agency costs, as achieved by the PSLRA, and guaranteeing the best possible recovery).  LAMPERS' Leadership Motion demonstrates that it is the *only* movant qualified to act as a proper Lead Plaintiff and that its selected counsel, Kessler Topaz Meltzer & Check LLP ("Kessler Topaz") and the Law Offices of Curtis Coulter, are the most qualified counsel to prosecute this derivative action on behalf of the nominal defendant, LVS.

Indeed, as discussed herein, LAMPERS is the only movant that satisfies all of the factors that courts consider when appointing a Lead Plaintiff.  LAMPERS: 1) is an institutional plaintiff; 2) has the largest financial interest, owning 76,800 shares of LVS shares worth over $3.15 million; 3) has filed a high quality complaint, which is superior to the *Moradi* Plaintiffs' complaint; and 4) has retained highly experienced counsel which is best positioned to vigorously prosecute this action on behalf of the Company.[3]  Furthermore, LAMPERS has a proven track record of acting as a fiduciary not only on behalf of the members of its pension fund but, more importantly, through its long history of acting as a lead plaintiff in shareholder representative actions and its recovery of hundreds of millions of dollars in those actions for both companies

---

[3] *See, e.g., Wiehl v. Eon Labs,* No. 1116-N, 2005 Del. Ch. LEXIS 40, at \*4 (Del. Ch. Mar. 22, 2005) (in selecting a leadership structure, "the relative economic stakes of the competing litigants in the outcome of the lawsuit" should be accorded "great weight"); *Dollens,* 2001 U.S. Dist. LEXIS 19966, at \*17 (discussing the "preference for institutional investors" to lead the litigation).  In addition to a plaintiff's financial stake in the company, courts will also consider the following factors:  (1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) whether plaintiffs are represented by capable counsel.  *Id.* at \*5; *TCW Tech. Ltd. P'ship v. Intermedia Commc'n, Inc.,* No. 18336, 2000 Del. Ch. LEXIS 147, at \*\*10-11 (Del. Ch. Oct. 17, 2000).

and investors.  Recognizing the importance of a proven fiduciary, such as LAMPERS, to be appointed as a lead plaintiff, its General Counsel, R. Randall Roche, submitted a sworn declaration with LAMPERS' Leadership Motion detailing LAMPERS' successful history of litigating complex shareholder actions and further demonstrating his commitment to actively direct and oversee the litigation and its counsel throughout its duration.  *See* Declaration of R. Randall Roche in Support of LAMPERS' Motion to Consolidate ("Roche Dec."), generally.

By stark contrast, the *Moradi* Plaintiffs, the only other "movants," have not demonstrated their ability to act as adequate fiduciaries.  Rather, they urge this Court to forego the appointment of a Lead Plaintiff and, instead, only appoint their counsel as Lead and Liaison Counsel.  It is not surprising that a cobbled-together group of individuals with disparate ownership interests in LVS would suggest as much, since they own a fraction of the shares owned by LAMPERS and lack LAMPERS' proven track record for leading and overseeing complex shareholder litigation.  However, regardless of whether the Court decides to appoint a "Lead Plaintiff," the *Moradi* Plaintiffs have utterly failed to establish their ability to act independent of counsel – a necessary requirement to prevent "lawyer-driven" litigation.  While each *Moradi* Plaintiff submitted a lone declaration in support of their motion, they do not explain how these four individuals intend to work together to lead and oversee this litigation by demonstrating, *inter alia*, their plans for joint oversight over the litigation and joint supervision of counsel and their decision-making mechanism in the event of an impasse among the group members.  It is telling that each declaration is silent as to these important issues, which speaks volumes about the *Moradi* Plaintiffs' attention to these important matters before seeking to lead (or to have their counsel) lead this litigation and the reason why many courts refuse to appoint a group of unrelated individuals with no prior experience of working together as Lead Plaintiffs.

For the reasons set forth herein and in LAMPERS' Leadership Motion, LAMPERS respectfully requests that the Court grant its motion and appoint LAMPERS as Lead Plaintiff and its counsel, Kessler Topaz and the Law Office of Curtis Coulter, as Lead and Liaison Counsel, respectively.

## II.   ARGUMENT

### A.   This Court Should Appoint LAMPERS as Lead Plaintiff and Approve Its Selection of Counsel as Lead and Liaison Counsel

As set forth in LAMPERS' Leadership Motion, when appointing a derivative lead plaintiff, courts across the country routinely follow the federal securities laws' requirement that the plaintiff with the largest financial interest in the litigation is presumptively selected as lead plaintiff – with a preference for the appointment of an institutional plaintiff with a large economic stake. *See, e.g., Wiehl,* 2005 Del. Ch. LEXIS 40, at *4 (in selecting a leadership structure, "the relative economic stakes of the competing litigants in the outcome of the lawsuit" should be accorded "great weight"); *Dollens,* 2001 U.S. Dist. LEXIS 19966, at *17 (discussing the "preference for institutional investors" to lead the litigation). In addition to a plaintiff's financial stake in the company, courts also consider the following factors: (1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) whether plaintiffs are represented by capable counsel. *Id.* at *5; *TCW Tech. Ltd. P'ship,* 2000 Del. Ch. LEXIS 147, at **10-11. [4] [5]

---

[4] While the *Moradi* Plaintiffs agree with LAMPERS that the Court should consider the last three factors - the quality of the pleadings, vigorousness of the prosecution of the lawsuits and capabilities of counsel - in appointing a leadership structure, they fail to mention "the largest financial interest" factor. However, they implicitly agree that a plaintiff's financial stake is an important factor to consider as, in support of their motion, they note that they have a "substantial economic stake" in LVS. *See* Memorandum of Law in Support of Motion of Plaintiffs Nasser Moradi, Richard Buckman, Doulas Tomlinson, and Matt Abbeduto, for Consolidation, and Appointment of Lead Counsel and Liaison Counsel ("Moradi MOL"), ECF No. 13, at 5, 12. The Court can draw its own inferences from their blatant omission of the "largest economic interest" factor in their analysis. Furthermore, these factors emanate from Delaware Chancery Court, which has a rich history of expertise in shareholder litigation, and, as such, Nevada courts and many other courts across country look towards Delaware law for guidance in analyzing shareholder derivative issues where Nevada's law is not well-developed – as is the case here. *See Shoen v. SAC Holdings Corp.,*

As an initial matter, the *Moradi* Plaintiffs chiefly seek the appointment of their counsel as

Lead and Liaison Counsel and argue that the appointment of a Lead Plaintiff is not necessary

here.  The *Moradi* Plaintiffs, however, fail to provide any specific explanation as to why such an

appointment is not appropriate.  Furthermore, their position is belied by the fact that in the very

same case they rely upon for the factors this Court should consider in its appointment of a

leadership structure, the court appointed a Lead Plaintiff - and the Lead Plaintiff it appointed was

LAMPERS, based upon its experience as an "active institutional litigant." *In re Bank of Am.*

*Corp. Sec. Derivative and ERISA Litig.,* 258 F.R.D. 260, 272 (S.D.N.Y. 2009).[6]  However, the

*Moradi* Plaintiffs' failure to explain their position is understandable.  After all, they are a group

of unaffiliated, individual investors who have not offered any assurances to the Court that they

can or will work together to efficiently and economically prosecute this litigation in the best

interests of the Company and the other shareholders.  Rather than provide such assurances, the

*Moradi* Plaintiffs have instead argued simply that their counsel should lead the litigation and that

---

137 P.3d 1171, 1180-81 (Nev. 2006).  Accordingly, LAMPERS urges this Court to follow Delaware jurisprudence and apply the above factors in its selection of an appropriate leadership structure.

[5] The other factors that the *Moradi* Plaintiffs ask this Court to consider are: their counsel's experience in shareholder derivative litigation, familiarity with the governing law, and willingness to dedicate adequate resources to prosecute the action.  As set out in LAMPERS' motion to appoint its counsel as Lead and Liaison Counsel, LAMPERS' counsel possesses all of these qualities and the *Moradi* Plaintiffs do not (and cannot) contend to the contrary.

[6] In support of this proposition, the *Moradi* Plaintiffs rely exclusively on an unpublished Report and Recommendation from a New York district court Magistrate Judge, who refused to appoint a Lead Plaintiff in a derivative action because "the preferred practice in th[at] Court is to consolidate derivative actions and appoint lead counsel without appointing a lead or representative plaintiff."  *See* Report and Recommendation in *In re DHB Indus., Inc. Derivative Litig.,* No. CV 05-4296 (E.D.N.Y. Jan. 9, 2006) at 21, attached as Exhibit E to the Reisman Declaration in Support of the *Moradi* Plaintiffs' Motion to Consolidate.  The recommendation noted, however, that Rule 23.1 "contemplate[s] the appointment of a 'lead' or 'representative' plaintiff" and further observed that there is "no per se rule against the appointment of a lead plaintiff."  *Id.* at 22 (emphasis in original).  More importantly, regardless of the prevailing trends in derivative actions in the Eastern District of New York, here in the Ninth Circuit, district courts have recognized the propriety and benefit of appointing a Lead Plaintiff in derivative actions and do so as a matter of course.  *See, e.g., Sexton v. Van Stolk,* No. C 07-1782(RSL), 2008 WL 1733242, at *1 (W.D. Wash. April 10, 2008) (appointing a lead plaintiff in a derivative action); *Hacker, v. Peterschmidt,* No. C 06-03468, 2006 WL 2925683, at *4 (N.D. Cal. Oct. 12, 2006) (same); *Brown v. Kelly,* No. C 06-4671, 2006 WL 3411868, at *2 (N.D. Cal. Nov. 27, 2006) (same); *Berkowitz v. Fodor,* No. C 06-05353 JW, 2006 WL 3365587, at *2 (N.D. Cal. Nov. 20, 2006) (same).  Furthermore, as discussed herein, courts in Delaware, to which Nevada Courts regularly look for guidance in derivative actions, regularly appoint lead plaintiffs in derivative actions.  *See* section II, *infra.*

the Court need not appoint a Lead Plaintiff.[7]  The appointment of a Lead Plaintiff, however, is appropriate here and is consistent with prevailing jurisprudence in shareholder derivative actions inside and outside the Ninth Circuit.  Furthermore, such appointments are necessary in order to ensure that there is proper oversight over the attorneys selected as lead counsel.  In short, it is better to have one qualified plaintiff, like LAMPERS, appointed to dictate the course of the litigation, rather than a diffuse group of plaintiffs with potentially conflicting ideas about how the case should proceed, or worse, without having any meaningful participation in such decisions.

The *Moradi* Plaintiffs' only true argument in support of their request that this Court appoint their counsel as Lead Counsel and Liaison Counsel centers on the fact that the *Moradi* Plaintiffs were the first parties to file and amend their Complaint.  Courts, however, routinely reject such "first-to-file" arguments for the very reasons presented here.  A court's task in appointing lead counsel is not as simple as identifying the attorneys who won the "race to the courthouse."  Rather, courts must identify the counsel that will best serve the interests of the nominal party and the absent shareholders.  *See King v. Verifone Holdings, Inc.*, 12 A.3d 1140, 1151 (Del. 2011) (noting the insignificance of which party was first-to-file a derivative complaint when establishing a leadership structure for a litigation).  Thus, the superiority of LAMPERS' Complaint should weigh more heavily in this Court's analysis than the speed with which the *Moradi* Plaintiffs filed their initial pleading.

---

[7] Nevertheless, the *Moradi* Plaintiffs argue that they should be Lead Plaintiffs if the Court appoints a Lead Plaintiff. It is curious, to say the least, that all of the *Moradi* Plaintiffs would seek appointment as Lead Plaintiff rather than selecting from amongst themselves the best potential candidate to serve in the fiduciary role.  Regardless of whether this decision stems from the *Moradi* Plaintiffs' inability to agree on a single proposed Lead Plaintiff or their lack of oversight over their counsel, it should raise a red flag to this Court regarding the motivation for the their argument.

As explained below, LAMPERS is an institutional investor with a larger economic stake *than all of the Moradi Plaintiffs combined*, and is the best-suited movant to serve as a fiduciary to LVS.

> **1.    LAMPERS Is an Institutional Investor with the Largest Economic Interest in LVS and Has Otherwise Demonstrated Its Ability and Willingness to Actively Oversee the Prosecution of this Litigation**

This Court, like other courts considering which movant to appoint as Lead Plaintiff, should give "great weight" to "the relative economic stakes of the competing litigants in the outcome of the lawsuit." *Wiehl,* 2005 Del. Ch. LEXIS 40, at *4 (holding that the relative economic stakes of the competing litigants should be accorded "great weight"); *TCW Tech. Ltd. P'ship*, 2000 Del. Ch. LEXIS 147, at *10 ("the Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit."). Indeed, the Delaware Chancery Court recently reiterated its preference for appointing the litigant with the largest ownership interest to lead the litigation. *See In re Del Monte Foods Co. S'holder Litig.*, 2010 WL 5550677. The court explained that such an appointment ensures that the litigant will adequately monitor its counsel, thereby reducing the problem of agency costs and guaranteeing the best possible recovery. *Id.* at **4-6. For similar reasons, following Congress' lead in enacting the PSLRA, which governs leadership structures in securities class actions, courts have recognized the added benefits of appointing institutional investors to lead shareholder derivative actions. *See id.; see also Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) ("although the [PSLRA] does not apply to derivative actions, the Court further notes Congress has demonstrated its preference for appointing institutional plaintiffs as Lead Plaintiffs in securities class actions because 'an institutional investor acting as a lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its

public investors."), citing S. Rep. No. 104-98 at 690; *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *17 (discussing the "preference for institutional investors" to lead the litigation).

Here, LAMPERS is an institutional investor controlling over $1.1 billion in assets for the benefit of retired municipal police officers in Louisiana. *See* Roche Dec. at ¶1.  LAMPERS holds 76,800 shares of LVS stock, valued at over $3.15 million.  *Id*.  In contrast, the *Moradi* Plaintiffs own only 12,845 shares of LVS stock in total, with different individuals owning disparate proportions relative to one another, ranging from as little as 200 shares to 11,145 shares.  *See Moradi* Compl. at ¶¶16-19.  Thus, there is no question that LAMPERS has the largest financial interest since its financial stake in LVS is approximately ***five (5) times*** the combined number of shares held by the *Moradi* Plaintiffs.

Furthermore, consistent with PSLRA's intent to have an experienced fiduciary appointed to lead complex shareholder litigation, LAMPERS' General Counsel has affirmed that LAMPERS is the best suited plaintiff to lead this litigation as he "believes that it is LAMPERS' fiduciary duty on behalf of its members to take an active role in shareholder litigation to ensure that the companies it makes investments in, and the members of those board of directors and their management, are abiding in by all appropriate laws and regulations and are fulfilling their fiduciary duties to the Company's shareholders."  *See* Roche Dec. at ¶3.  In fulfilling its fiduciary role, LAMPERS has also demonstrated that it is willing to take on the responsibility of ensuring the efficient prosecution of the derivative action on the Company's behalf through its oversight of counsel which, as discussed above in the *Del Monte Foods* opinion, should weigh heavily in favor of its appointment as Lead Plaintiff.  Indeed, LAMPERS has stated its commitment to "actively direct[] this litigation by overseeing the preparation and filing of pleadings as well as attending hearings, depositions and/or trial, as appropriate."  *See* Roche Dec.

at ¶4. In light of these beliefs and commitments, other courts have recognized that LAMPERS "is an *experienced and active* institutional litigant" who will more than adequately fulfill the fiduciary role of Lead Plaintiff. *In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. at 273 (emphasis added); *In re Del Monte Foods Co. S'holder Litig.*, 2010 WL 5550677 (appointing LAMPERS as Lead Plaintiff); *see also* Roche Dec. at ¶2 (listing several derivative and securities class actions in which LAMPERS secured significant recoveries on behalf of the companies in which it invests and other similarly situated shareholders). Accordingly, there is no doubt that LAMPERS has all of the necessary qualifications to lead this litigation.

In contrast, the *Moradi* Plaintiffs are a cobbled-together group of LVS shareholders with no real interest in leading this litigation and, as such, they have failed to demonstrate that they are able to "function cohesively and to effectively manage the litigation apart from their lawyers." *In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. at 270. Because of this very real concern, many courts reject appointing groups with no prior experience of working together as Lead Plaintiffs. *See, e.g., In re McDermott Int'l, Inc. Sec. Litig.,* No. 08 Civ. 9943(DC), 2009 WL 579502, at *5 (S.D.N.Y. Mar. 6, 2009) (rejecting proposal to appoint co-lead plaintiffs because plaintiffs had not "provided the Court with any evidence of their pre-litigation relationship, their past cooperation, or any plans for future cooperation"); *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972(PKC), 2007 WL 4302732, at **1-2 (S.D.N.Y. Dec. 6, 2007) (rejecting groups because there was "no showing that the members of either 'group' have, in fact, functioned as a group"). Rather, courts regularly require a group of plaintiffs to establish that they are able to function as a group, and, most often, such groups are comprised of institutions that have experience acting in a fiduciary capacity. *See In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. at 270 (appointing group of institutions as lead

plaintiffs "[b]ecause they have established their ability to act independent of counsel" by submitting  declarations that demonstrated "cooperative efforts among the funds" and that included affirmations regarding:  their decision to act jointly in the case; plans for joint oversight over the litigation and joint supervision of counsel, including implementing protocols for regular communication among members and with counsel; and prior in-person meetings and conference calls among the members of the group).  The *Moradi* Plaintiffs have made no such showing of their ability to function together as a cohesive group.  Furthermore, they have failed to explain what, if any, decision-making mechanism they have adopted if there is a divergence of views, especially if light of the fact that they have an even number of members.  Thus, there is no explanation as to how they will make a decision if there is an even split amongst the members of the group.  In short, allowing this action to proceed under the oversight or control of this group of otherwise unaffiliated shareholders would be counterproductive to the efficient resolution of this action.

### 2.    LAMPERS' Complaint Is Superior to the *Moradi* Complaint

In addition to the fact that LAMPERS has demonstrated its ability to act a fiduciary on behalf of LVS, LAMPERS' dedication to this litigation is further evidenced by its filing of a high quality complaint that is superior to the *Moradi* Plaintiffs' Complaint.  This factor also weighs heavily in favor of the appointment of LAMPERS as Lead Plaintiff.

While the *Moradi* Plaintiffs boast of their "25-page, 69-paragraph complaint that included particularized allegations detailing the wrongdoing at Sands" (*Moradi* MOL at 13), when compared to LAMPERS' 40-page, 96-paragraph comprehensive pleading, it is clear that the *Moradi* Plaintiffs missed key factual allegations that will ensure that this action survives a

motion to dismiss.[8]  Indeed, LAMPERS' Complaint not only describes in detail the misconduct of LVS' directors and executive officers, but also contains well-developed and in-depth allegations regarding Sheldon G. Adelson's history of control and domination over LVS and its Board, which are simply absent from the *Moradi* Complaint.  Similarly, LAMPERS' demand futility allegations, *in toto*, are more robust and better supported than the *Moradi* Plaintiffs' demand futility allegations – a threshold issue to be determined by the Court in order to allow a plaintiff to prosecute a derivative action.[9]  First, the *Moradi* Complaint fails to plead that the Company's own public filings expressly state that four of the eight members of the Board (defendants Sheldon G. Adelson, Irwin Chafetz, Charles D. Forman, and Michael A. Leven) are not independent, and therefore lack the ability to impartially consider a litigation demand. LAMPERS Compl. at ¶81.   Second, the *Moradi* Plaintiffs failed to describe with any particularity the ongoing business and personal relationships between Adelson, Chafetz, Forman, and Leven, which likewise attest to the latter three individuals' inability to consider a demand to institute litigation against Adelson.  *Id.* at ¶¶ 83-85.  Thus, while the *Moradi* Complaint baldly asserts that a litigation demand on the Board would be futile because "Defendants have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations," LAMPERS' Complaint actually contains the particularized and detailed factual allegations demonstrating this to be true.

---

[8] LAMPERS' Complaint also named former Board member Wing T. Chao as a defendant in its action because of the role he played in the wrongdoing alleged in LAMPERS' Complaint.

[9] Specifically, a plaintiff must provide sufficient allegations that a majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute the derivative action.  *See Aronson v. Lewis,* 473 A.2d 805, 814 (Del. 1984).

In addition to considering the quality of the pleadings, the *Moradi* Plaintiffs also argue that their counsel should be appointed to lead this litigation because they were the first-to-file and "amend" their Complaint. *See* Moradi MOL, ECF No. 13 at 12-13.[10]   However, the Court should reject this argument, as courts routinely do, because establishing a rule by which the first party to file a complaint *always* leads a derivative litigation would undermine the goal of selecting the representative who would "best serve" the interests of the nominal party and other shareholders.  As the Delaware Chancery Court has explained:

> Although it might be thought, based on myths, fables, or mere urban legends, that the first to file a lawsuit in this Court wins some advantage in the race to represent the shareholder class, that assumption, in my opinion, has neither empirical nor logical support.
>
> Too often judges of this Court face complaints filed hastily, minutes or hours after a transaction is announced, based on snippets from the print or electronic media. Such pleadings are remarkable, but only because of the speed with which they are filed in reaction to an announced transaction.  It is not the race to the courthouse door, however, that impresses the members of this Court when it comes to deciding who should control and coordinated litigation on behalf of the shareholder class.

*TCW Tech. Ltd. P'ship,* 2000 Del. Ch. LEXIS 147, at **8-10; *see also King,* 12 A.3d at 1151; *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 957 (Del. Ch. 2007) (explaining that being first-to-file has "no substantial weight in determining who should be lead counsel in a representative action"); *Doyle v. Rich,* No. 5570, 1978 WL 22021 (Del. Ch. June 21, 1978) (rejecting counsel's first-to-file argument: "a determination as to lead counsel in an action brought for the benefit of others should not be controlled by the winner of a race to the courthouse.").  The very case law cited by the *Moradi* Plaintiffs is in accord with this conclusion.  For example, the district court

---

[10] Cognizant that being first-to-file is not a factor that courts will normally find dispositive when creating a leadership structure, the *Moradi* Plaintiffs suggest that their first-filed complaint somehow indicates that they are more vigorously prosecuting this action than the other litigants. *See id.*  The *Moradi* Plaintiffs' sleight of hand in this regard should not receive any credence by this Court.  Indeed, when carefully considered, the factors identified by the *Moradi* Plaintiffs demonstrate that Kessler Topaz, as counsel for LAMPERS, should be appointed lead counsel in this action.

presiding over *In re Comverse Tech. Inc. Derivative Litig.* rejected a "first-to-file" argument in favor of appointing LAMPERS and its counsel as Lead Plaintiff and Lead Counsel, respectively. No. 06-cv-1849 (NGG) (RER), 2006 WL 3761986, at *3 n.8. (E.D.N.Y. Sept. 22, 2006).[11] Furthermore, the mere fact that the *Moradi* Plaintiffs filed an "amended" complaint does not provide a reason to appoint them to lead this litigation. Indeed, contrary to the *Moradi* Plaintiffs' assertion that their amended complaint "include[d] additional factual allegations supporting the claims against the defendants,"[12] the Amended Complaint *did not* include any additional substantive allegations regarding the claims at issue. Rather, the Amended Complaint appears to simply correct the initial Complaint's repeated mistaken references to a singular plaintiff.

In sum, by taking the time to properly investigate and substantiate its demand futility allegations and the claims at issue, LAMPERS has filed a comprehensive complaint that (1) will survive a motion for dismissal and (2) is superior to the complaint (and amended complaint) filed by the *Moradi* Plaintiffs. Accordingly, LAMPERS and its counsel have demonstrated that they will better serve the interests of the Company and its shareholders if appointed to lead this litigation. *See TCW Tech. Ltd. P'ship*, Del. Ch. LEXIS 147, at *8 ("In fact, this Court and the Delaware Supreme Court have repeatedly emphasized the importance of plaintiffs' counsel taking the time . . . to craft pleadings with particularized factual allegations necessary to survive the inevitable motions to dismiss.").

---

[11] Similarly, the district court presiding over *In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. at 273, appointed LAMPERS as Lead Plaintiff and its counsel as Co-lead Counsel. After determining that all of the movants' pleadings were "well-drafted," the court selected LAMPERS and its counsel to lead the litigation because "LMPERS is an experienced and active institutional litigant."

[12] Moradi MOL at 13.

3.    **As Lead Counsel, Kessler Topaz Will Provide LVS With the Highest Quality Legal Representation**

Kessler Topaz is one of the most experienced firms in the country in complex shareholder litigation and has recovered billions of dollars in damages on behalf of the shareholders and companies it represents.  As detailed in LAMPERS' Leadership Motion, Kessler Topaz has over 90 attorneys specializing in complex shareholder litigation and has served as Lead or Co-Lead Counsel in numerous high profile securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in hundreds of shareholder derivative actions in state and federal courts across the country.  For these reasons, LAMPERS has selected and retained Kessler Topaz in this matter "based upon the firm's extensive experience in prosecuting shareholder derivative actions and their successful achievements in such litigation."  *See* Roche Dec. at ¶7; *see also* Kessler Topaz Firm Resume, attached as Exhibit A to the Winchester Decl.

Indeed, Kessler Topaz has demonstrated its familiarity with the governing law and willingness to dedicate adequate resources to prosecute the action as evidenced by its well researched and high quality complaint filed on behalf of LVS.  In addition, Kessler Topaz has further demonstrated its vigor and dedication to lead this action by subsequently convening a call with all Plaintiffs' counsel to discuss the consolidation of the related derivative actions and an appropriate leadership structure for a consolidated action.   Therefore, there is no doubt that if appointed as Lead Counsel on behalf of LVS, Kessler Topaz will provide the highest quality advocacy on behalf of LVS and it shareholders.  Last, Kessler Topaz and the Law Offices of Curtis Coulter are presently serving as Lead and Liaison Counsel, respectively, before this Court in the *MGM Mirage Sec. Litig.,* No. 2:09-cv-01558-GMN-LRL (D. Nev. 2009) and have a proven history of working together.  Accordingly, the Court should appoint Kessler Topaz as Lead Counsel and the Law Office of Curtis Coulter as Liaison Counsel.

III.   **CONCLUSION**

For the foregoing reasons, LAMPERS requests that this Court grant its motion and consolidate the Related Derivative Actions. LAMPERS further requests that the Court grant its motion and appoint LAMPERS as Lead Plaintiff and its counsel, Kessler Topaz and the Law Offices of Curtis Coulter as Lead and Liaison Counsel and deny the *Moradi* Plaintiffs' motion to the extent it requests a particular leadership structure for a consolidated action.

DATED: June 6, 2011

**LAW OFFICES OF CURTIS B. COULTER, P.C.**

_____   /s/ Curtis B. Coulter   ___
Curtis B. Coulter
403 Hill Street,
Reno, Nevada 89501
Telephone: (775) 324.3380
Facsimile: (775) 324.3381
ccoulter@coulterlaw.net

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Kristen L. Ross
Justin O. Reliford
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile:  (267) 948-2512
ezagar@ktmc.com
rwinchester@ktmc.com
kross@ktmc.com
jreliford@ktmc.com

*Counsel for Plaintiff Louisiana Municipal Police Employees' Retirement System*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and have further provided notice to all counsel of record in the related derivative actions brought on behalf of Nominal Defendant Las Vegas Sands Corp. through the same electronic filing system.



                                    /s/ Curtis B. Coulter
                                    Curtis B. Coulter