1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7              DISTRICT OF NEVADA
8                     * * *
9  NASSER MORADI, et al.,                Case No. 2:11-cv-00490-MMD-RJJ
                        Plaintiffs,              ORDER
10         v.
                                         (Defs.' Motion to Dismiss or Stay Action
11 SHELDON GARY ADELSON, et al.,          Pending Resolution of State Proceeding
                                          and Investigation by Special Litigation
12                      Defendants.          Committee – dkt. no. 77)
13

14 **I.    SUMMARY**

15         Before the Court is Defendants' Motion to Dismiss or Stay Action Pending

16 Resolution of State Proceeding and Investigation by Special Litigation Committee

17 ("Motion to Dismiss or Stay").  (Dkt. no. 77.)  For reasons stated below, the Court grants

18 Defendants' Motion to Stay Pending the Resolution of the Special Litigation Committee's

19 Investigation.  The Motion is denied without prejudice in all other respects.

20 **II.   BACKGROUND**

21         Plaintiffs commenced three separate federal shareholder-derivative actions in

22 April 2011.  Shareholder Plaintiffs allege that the directors of the Las Vegas Sands

23 ("LVS") Board of Directors breached their fiduciary duties in connection with LVS'

24 operations in the Chinese special administrative region of Macau.  (*See* dkt. no. 78.)

25         In February 2011, the Securities and Exchange Commission ("SEC") issued a

26 subpoena to LVS requesting that it produce documents relating to its compliance with

27 the Foreign Corrupt Practices Act ("FCPA").   LVS complied on March 1, 2011.  This

28 public disclosure led to the filing of a number of shareholder-derivative actions including

the consolidated action before this Court.  LVS is also currently under investigation by the SEC and the Department of Justice ("DOJ") relating to its possible FCPA violations.

The alleged FCPA violations provide the basis for Plaintiffs' lawsuit.  Plaintiffs allege that Defendants' FCPA violations will have a significant negative impact on the company, estimating the cost to be in "the hundreds of millions of dollars." (Dkt. no. 78 at 9.)  Plaintiffs explain that:

> Non-compliance with the FCPA may result in fines, sanctions, and other adverse actions, including exposing the Company to civil liability. Because Sands operates in some countries that involve a higher than normal risk of violations of the anti-corruption laws, including the FCPA, the Sands Board had a fiduciary duty to install and maintain internal controls and [an] accounting system for compliance with the FCPA.

(Dkt. no. 78 at 4.)

In their Consolidated Complaint (dkt. no. 78), Plaintiffs allege (1) breach of fiduciary duty; (2) abuse of control; (3) waste of corporate assets; and (4) conspiracy. (*Id.* at 48-50.)

On August 25, 2011, the Court consolidated the three shareholder-derivative lawsuits and directed Plaintiffs to file a consolidated amended complaint.  (Dkt. nos. 52 & 75.)  However, before Plaintiffs filed their Consolidated Complaint, Defendants filed a Motion to Dismiss or Stay.  Defendants argue that *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), requires this Court to stay or dismiss the federal action because of the existence of an earlier-filed nearly identical shareholder-derivative action pending in state court.  (Dkt. no. 77.)  That case, *In re Las Vegas Sands Derivative Litigation*, has been voluntarily stayed since October 5, 2011, and the most recent stipulated stay is set to expire in October 2012.  In the alternative, Defendants request that the Court temporarily stay the action to allow LVS' Special Litigation Committee ("SLC") to complete its investigations regarding Plaintiff's allegations.

In response to the Court's order for a joint status report on the progress of the SLC's investigation, Defendants submitted a declaration from counsel for the SLC, ///

2

1   reporting that the SLC's inquiry is expected to be substantially completed by the end of

2   October 2012.  (Dkt. no. 111-1.)

3   **III.    DISCUSSION**

4          Based on the representation relating to the progress of the SLC's investigation,

5   the Court determines that the appropriate course of action is to stay this case until

6   October 2012.  The Court therefore declines to rule on Defendants' Motion to Dismiss or

7   Permanently Stay the action at this time.  That Motion is dismissed without prejudice.

8          **A.    Legal Standard**

9          The landmark case *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981)

10  "permits a corporation to use a special litigation committee to restore control over

11  derivative litigation if a group of independent directors is so empowered to act for the

12  corporation."[1]  *In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1210 (Del. Ch. 2002).

13  "When a special litigation committee is empowered to decide whether and in what

14  manner a derivative suit should proceed, the *Zapata* procedure takes the case away

15  from the [derivative] plaintiff, turns his allegations over to special agents appointed on

16  behalf of the corporation for the purpose of making an informal, internal investigation of

17  his charges, and places the plaintiff on the defensive [if a] motion to dismiss is filed by

18  the special litigation committee."  *Id.* at 1210-11 (citation and internal quotation marks

19  omitted; brackets in original).  *See also Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch.

20  1984) *aff'd*, 499 A.2d 1184 (Del. 1985) ("It is a foregone conclusion that [a motion to stay

21  pending the resolution of an SLC investigation] must be granted. Otherwise, the entire

22  rationale of *Zapata*, i.e., the inherent right of the board of directors to control and look to

23  the well-being of the corporation in the first instance, collapses.")

24         In *Abbey v. Computer & Commc'ns Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch.

25  1983), the court explained the importance of staying pending litigation when a

26  corporation forms an SLC:

27  _____

28  [1]Nevada courts follow Delaware law when addressing shareholder-derivative
    lawsuits.  *In re Amerco Derivative Litig.*, 252 P.3d 681, 697 (Nev. 2011).

If *Zapata* is to be meaningful, then it would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval. If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted.

In light of these considerations, courts routinely grant reasonable stays to allow special litigation committees to complete their investigations. *In re InfoUSA, Inc. Shareholders Litig.*, No. CIV. A. 1956-CC, 2008 WL 762482, at *2 (Del. Ch. Mar. 17, 2008).

**B. Analysis**

Defendants argue that this case should be stayed under the principles discussed in *Abbey* to allow the LVS SLC to investigate the allegations raised in the shareholder Complaint. (Dkt. no. 77 at 16.) Defendants further contend that a "stay is particularly appropriate here given the complex, competing demands that this litigation has placed on the [B]oard and its SLC . . . ." (Dkt. no. 86 at 13.)

Plaintiffs counter that the case should not be stayed pending the resolution of the SLC investigation for three reasons. (Dkt. no. 82 at 15-21.) First, Plaintiffs argue that the LVS Board only delegated investigative authority to the SLC, whereas the case law supports staying an action until the conclusion of an SLC investigation *only* where the SLC is delegated authority to make the ultimate determination as to the course of action to be taken in response to shareholders' allegations. (Dkt. no. 82 at 16.) Second, Plaintiffs argue that there is reason to doubt that the SLC is disinterested and independent of the LVS Board because three of the members of the SLC are defendants in this action. (Dkt. no. 82 at 17-20.) Third, Plaintiffs argue that the delay produced by temporarily staying this litigation will result in substantial prejudice to Plaintiffs. (Dkt. no. 82 at 20-21.)

///

1    The Court agrees with Defendants and concludes that this case should be

2 temporarily stayed until the close of the SLC investigation. This case is particularly

3 complex given the multiple lawsuits filed against Defendants, the numerous federal and

4 state statutes for which Plaintiffs allege Defendants violated, and the many ongoing

5 investigations of LVS that are being conducted by federal and state authorities. The

6 LVS Board has provided the LVS SLC with the sole discretion to conduct an

7 independent investigation into these matters. In accordance with this directive, the SLC

8 has interviewed in excess of 200 individuals in both the United States and Macau. (Dkt.

9 no. 111-1 at 3.) It is also in the process of reviewing "millions of potentially relevant

10 documents," some of which are in Chinese and Portuguese. (*Id.*) The SLC anticipates

11 being finished with its investigation in October of this year. This complex investigation

12 expends significant corporate resources which would be further strained by

13 simultaneously proceeding with this lawsuit. More importantly, the results of the

14 investigation will likely bring to light facts relevant to the litigation, and the SLC's

15 recommendation regarding whether LVS should pursue the litigation may also have a

16 significant impact on this case. Because of the complexity of the investigation, the policy

17 favoring staying litigation until the conclusion of an SLC's investigation, and the fact that

18 the SLC anticipates concluding its investigation in approximately two months, the Court

19 determines that a stay is appropriate in this case.

20    Plaintiffs' arguments to the contrary are unavailing. Regarding their first

21 argument, it is true that "a mere advisory role of the Special Litigation Committee fails to

22 bestow sufficient legitimacy on [a board's] decision to warrant deference . . ." in the

23 context of a board's recommendation to dismiss a lawsuit. *In re Par Pharm., Inc.*

24 *Derivative Litig.*, 750 F. Supp. 641, 547 (S.D.N.Y. 1990). However, here the Court is

25 merely temporarily staying the lawsuit, not deciding on Defendants' Motion to Dismiss.

26 Therefore the relative power of the SLC vis-à-vis the Board to make critical decisions

27 regarding the decision to proceed with a shareholder derivative action is of no significant

28 import here. Moreover, the SLC may recommend pursuing the litigation and the Board

1   may adopt its decision.  It would thus be premature to demean the SLC's legitimacy

2   *before* it finishes its investigation and makes its recommendations to the Board.

3          Plaintiffs' second argument – that there is reason to doubt the independence of

4   the SLC – is also unconvincing.  Plaintiffs cite to *Biondi v. Scrushy*, 820 A.2d 1148, 1165

5   (Del. Ch. 2003) *aff'd sub nom. In re HealthSouth Corp. Shareholders Litig.*, 847 A.2d

6   1121 (Del. 2004), for the proposition that a stay should not be granted when the

7   undisputed facts in the record at the time of the stay motion demonstrate that the SLC

8   does not satisfy the *Zapata* requirement for independence.  (Dkt. no. 82 at 17).  Yet the

9   typical course of action is to attack the independence of the SLC *after* the committee has

10  issued its report.  *See Biondi*, 820 A.2d at 1164.  "One of the obvious reasons for this

11  normal practice is that in most cases a facial attack on the independence of the special

12  litigation committee at the time of the stay application would be futile.  After all, the

13  purpose of forming a special litigation committee is to entrust the fate of the lawsuit to

14  directors whose impartiality cannot reasonably be questioned."  *Id.*  Further, the

15  undisputed facts in the record here do not demonstrate that the SLC's composition

16  violates the *Zapata* independence requirement.  LVS has retained independent counsel

17  as required by Delaware law.  *See in re Par Pharm.*, 750 F. Supp. at 647.  Despite this,

18  Plaintiffs contend that three members of the SLC Audit Committee – Siegler, Adler, and

19  Schwartz – are named defendants in this action and were "hand selected" for the SLC

20  by Sheldon Adelson, LVS' majority shareholder.  (Dkt. no. 19 at 23.)   While these

21  allegations, if true, could taint the independence of the SLC, merely being named as

22  defendants does not establish that Siegler, Adler, and Schwartz are not independent.

23  And Plaintiffs do not plead with particularity their allegations regarding these defendants'

24  lack of independence.  *See In re First Bancorp Derivative Litig.*, 465 F. Supp. 2d 112,

25  120 (D. P.R. 2006).  This Court agrees with the *InfoUSA* court's reasoning that "judicial

26  economy is served by permitting [the independence] issue to be addressed after the

27  committee has issued its report, because the court may then consider questions of

28  ///

committee independence at the same time it examines the reasonableness of the bases for the committee's conclusion."  2008 WL 762482, at *2 (brackets in original).

Finally, the Court rejects Plaintiffs' argument that temporarily staying this action will unduly prejudice them.  A "stay of action requires a balancing of the interest of the plaintiff, the interests of the defendant, all with an eye to the efficient and fair administration of justice."  *Carleton Inc. v. TLC Beatrice Intern. Holdings, Inc.*, No. 13950, 1996 WL 33167168, at *8-9 (Del. Ch. June 6, 1996).  As Defendants note, the SLC needs time to gather information from its numerous witnesses and review the voluminous documents it has gathered.  (Dkt. no. 77 at 19.)  Proceeding with this lawsuit before the conclusion of the SLC's investigation could harm Plaintiffs if the SLC recommends pursuing Plaintiffs' litigation.  If it does not, Plaintiffs may challenge that decision in this Court.  Plaintiffs will endure minimal prejudice by staying this action until October.  The Court will revisit the stay at the end of October whether or not the SLC has concluded its investigation.

For these reasons, Defendants' Motion to Stay this action pending the resolution of the SLC's investigation is granted.  The Motion is denied without prejudice in all other respects.

**IV.   CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or Stay Action Pending Resolution of State Proceeding and Investigation by Special Litigation Committee  (dkt. no. 77) is GRANTED in part and DENIED in Part.  The Court GRANTS Defendants' Motion to Temporarily Stay the Action.  The Court DENIES Defendants' Motion to Dismiss or Permanently Stay without prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court must stay this action until October 30, 2012.

///

///

///

1    IT IS FURTHER ORDERED that the parties file a joint status report with the Court

2  on or before October 30, 2012, describing what progress the Las Vegas Sands SLC has

3  made in its investigation and the status of this case in general.

4    DATED THIS 27th day of August 2012.

5

6  _____

7                  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28