**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

NASSER MORADI, et al.

Plaintiffs,

v.

SHELDON GARY ADELSON, et al.,

Defendants.

Case No. 2:11-cv-00490-APG-NJK

**ORDER DENYING MOTION TO DISMISS AND GRANTING REQUEST FOR STAY**

(Dkt. No. 116)

I.   **BACKGROUND**

In April 2011, Plaintiffs[1] commenced three separate shareholder derivative actions in this Court[2] which have since been consolidated.[3]  One month prior, on March 9, 2011, a similar case was filed in Nevada state court.[4]  That case is now pending in the state business court division. On April 18, 2011, yet another similar case was filed in state court.[5]  The second state case has since been consolidated into *Kohanim*, the first-filed state case.[6]  In short, the federal cases have been consolidated into the instant case and the state cases have been consolidated into *Kohanim*.

All of these cases were filed shortly after LVS disclosed that the Securities and Exchange Commission ("SEC") had issued a subpoena in February 2011 requesting that LVS produce

---

[1] Plaintiffs are shareholders of Las Vegas Sands Corp. ("LVS," "Sands," or the "Company"), on whose behalf they bring this action derivatively.

[2] Case numbers: 2:11-cv-00490-APG-NJK (the base case); 2:11-cv-00595-APG-NJK, and 2:11-cv-00636-APG-NJK.

[3] (Dkt. No. 52.)

[4] *Kohanim v. Adelson, et al.*, No. A-11-636656-B (Denton, J.) (now captioned *In re Las Vegas Sands Derivative Litigation*).

[5] *Gaines, et al. v. Adelson, et al.*, No. A-11-639645-B.

[6] (Dkt. No. 77 at 2.)

documents relating to its compliance with the Foreign Corrupt Practices Act ("FCPA")[7] for its operations in Macau.

LVS is a "multinational, multi-use resort development and gaming company" with properties and operations worldwide.[8]  Its stock is listed on the New York Stock Exchange.[9] Through its majority-owned subsidiary, Sands China Limited ("SCL"), LVS owns several casino resort properties in Macau.

Plaintiffs plead four claims for relief in their Consolidated Complaint: (1) breach of fiduciary duty; (2) abuse of control; (3) waste of corporate assets; and (4) civil conspiracy.  The defendants are the nine members of LVS's board of directors at the time of the alleged illegal conduct: Sheldon G. Adelson, Jason N. Ader, Irwin Chafetz, Wing T. Chao, Charles D. Forman, George P. Koo, Michael A. Leven, Jeffrey H. Schwartz, and Irwin A. Siegel (collectively, the "Board" or the "Defendants").  Ader, Schwartz, and Siegel also serve on LVS's Audit Committee (collectively, the "Audit Committee Defendants").  Adelson is also LVS's Chairman of the Board, Chief Executive Officer, and controlling shareholder.[10]  In addition, Adelson is the Chairman of the Board of SCL.

The crux of Plaintiffs' claims is that Defendants breached their fiduciary duties by failing to implement sufficient internal controls to ensure compliance with the FCPA and with state gaming regulations that prohibit state gaming licensees from entering into "unsuitable" associations.  Plaintiffs further contend that the Audit Committee Defendants had a heightened duty because the Audit Committee Charter made them responsible to oversee LVS's compliance with legal and regulatory requirements.  Specifically, the Audit Committee Defendants were charged with reviewing "the adequacy of the Company's internal controls and its procedures designed to ensure compliance with laws and regulations and any special audit steps adopted in light of material control deficiencies," and reviewing "with management and the independent

---

[7] 15 U.S.C. §§ 78m, 78dd-1, 78dd-2, 78dd-3, 78ff.

[8] (Consolidated Complaint ¶ 55, Dkt. No. 78.)

[9] (*Id.* ¶ 57.)

[10] (Consol. Compl. ¶ 12.)

registered public accounting firm any reports or disclosures submitted by management to the Audit Committee, … including management's assessment of the Company's internal control over financial reporting[.]"[11]

   Plaintiffs also assert that Adelson breached his fiduciary duty by directing Steven C. Jacobs—the then-CEO of SCL—"to engage in illicit business practices that would have violated the FCPA."[12]   Adelson allegedly directed Jacobs to

> (i) use "improper leverage" against senior Macau government officials to obtain and sell strata-title[13] of The Four Season Apartments in Macau;

> (ii) threaten to withhold business from Chinese banks unless they pressured senior Macau government officials to deliver strata-title for the Four Seasons Apartments to Sands, and give the company "favorable treatment" with regards to labor quotas and table limits;

> (iii) conduct discrete investigation[s] of senior Macau government officials in order to discover adverse information it could later use to influence the same officials for the benefit of Sands;

> (iv) hire [Leonel] Alves, who was a local Macau attorney and also a Macau government official,[14] as SCL's Legal Advisor notwithstanding apparent violations of the FCPA arising from Alves' position in the Macau government; and

> (v) refrain from disclosing material information to SCL's Board including the Company's involvement with junket business led by the [Chinese organized crime] Triads.[15]

Plaintiffs contend that Adelson fired Jacobs (with approval by Leven, Siegel, and Schwartz) after Jacobs refused to engage in the allegedly illegal practices.  Shortly after Jacobs was fired,[16] SCL rehired Leonel Alves ("Alves") as its Legal Advisor.[17]

---

[11] (*Id.* ¶ 42.)

[12] (*Id.* ¶ 13.)

[13] According to Plaintiffs, the sale of strata-title is a point of contention between LVS and the Macau government because LVS's current land lease on the Cotai Strip does not authorize strata-title sales of apartments.  (Consol. Compl. ¶ 66.)  Only gaming and hospitality projects are authorized there.  (*Id.*)

[14] Alves is a member of Macau's Executive Council and Legislative Assembly, and he also serves as Chairman of the Audit Committee for Macau's monetary authority.  (*Id.* ¶ 80.)

[15] (*Id.* ¶ 79.)

[16] The factual allegations underlying the instant claims largely came to light in Jacobs's wrongful termination suit against LVS.  (*Id.* ¶ 79.)

[17] (*Id.* ¶ 81.)

Because of the Board's failure of oversight and Adelson's conduct, Plaintiffs allege, LVS is now exposed to and the subject of costly investigations by the SEC, Department of Justice ("DOJ"), Federal Bureau of Investigations ("FBI"), and Nevada Gaming Control Board ("NGCB").[18]  Although Plaintiffs plead violations of the FCPA, their claims do not necessarily depend on proving those violations.  At root, Plaintiffs' fiduciary duty claim lies in tort—that Defendants' breach of fiduciary duties (Adelson's actions and the Board's inaction) exposed LVS to such a substantial risk of violating the FCPA and Nevada gaming regulations that the breach effectively caused the costly government investigations.  Put another way, if the Board had implemented sufficient internal controls and properly overseen Adelson, then the government investigations would not have occurred.[19]

As to the other claims, Plaintiffs contend that (i) Defendants' misconduct "constituted an abuse of their ability to control and influence Sands, for which they are legally responsible"; (ii) Defendants caused LVS to "waste valuable corporate assets"; and (iii) Defendants, "by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiffs."[20]

In November 2011, Defendants moved to dismiss or stay the instant case pending the resolution of the allegedly parallel state proceeding and the investigation by the Board's special litigation committee ("SLC").[21]  In August 2012, the Court granted in part and denied in part the First MTD.[22]  The Court stayed the case until October 30, 2012 to allow the SLC to complete its investigation and denied the motion to dismiss without prejudice.

On October 30, 2012, the parties filed a joint status report explaining that the SLC did not expect to complete its investigation until at least the end of January 2013.[23]  Defendants requested

---

[18] (*Id.* ¶¶ 19–20.)

[19] (*See* Dkt. No. 120 at 3.)

[20] (Consol. Compl. ¶¶ 129, 133, 136.)

[21] (Dkt. No. 77, the "First MTD.")

[22] (Dkt. No. 113.)

[23] (Dkt. No. 114.)

that the stay be lifted so that they could file another motion to dismiss.[24]  On November 7, the Court ordered the stay lifted in light of Defendants' request and the Court's desire to avoid further delay on account of the SLC.[25]  The Court gave Defendants two weeks to file a motion to dismiss and/or a motion to stay under *Colorado River*.[26]

Subsequently, Defendants filed the motion to dismiss at issue in this Order.[27]  Defendants contend that (i) the Court should decline to exercise jurisdiction over the case under *Colorado River*; (ii) the case is not ripe for adjudication because the alleged damages are speculative; and (iii) Plaintiffs fail to state a claim because their allegations against Adelson do not constitute a violation of the FCPA and because, as against the Board, Plaintiffs plead no facts supporting the alleged failure of oversight.

On April 3, 2014, the heard oral argument on whether the case should be stayed or dismissed under the *Colorado River* doctrine.  The parties reported that *Kohanim* is stayed in state court because it presents a conflict of interest with another case in state court—Jones's employment lawsuit against LVS.[28]

## II.    ANALYSIS — *COLORADO RIVER* ABSTENTION

The Supreme Court has determined that under certain circumstances, a federal district court may decline to exercise or postpone the exercise of its jurisdiction when there are concurrent state and federal suits and when doing so would promote wise and sound judicial administration, including the conservation of judicial resources and the avoidance of piecemeal litigation.[29]  However, because federal courts have "the virtually unflagging obligation … to exercise the

---

[24] (*Id.*)

[25] (Dkt. No. 115.)

[26] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

[27] (Dkt. No. 116, the "Motion.")

[28] (*See* Dkt. No. 129.)

[29] *Colorado River*, 424 U.S. at 817.

jurisdiction given to them,"[30] "courts may refrain from deciding an action for damages only in 'exceptional' cases, and [where] 'the clearest of justifications' support dismissal."[31] "Only in rare cases will 'the presence of a concurrent state proceeding' permit the district court to dismiss a concurrent federal suit 'for reasons of wise judicial administration.'"[32]

Eight factors guide the court as to whether to grant a *Colorado River* dismissal or stay:

(1) which court first assumed jurisdiction over any property at stake;
(2) the inconvenience of the federal forum;
(3) the desire to avoid piecemeal litigation;
(4) the order in which the forums obtained jurisdiction;
(5) whether federal law or state law provides the rule of decision on the merits;
(6) whether the state court proceedings can adequately protect the rights of the federal litigants;
(7) the desire to avoid forum shopping; [and]
(8) whether the state court proceedings will resolve all the issues before the federal court.[33]

A stay is preferable to a dismissal so that "the federal forum will remain open if for some unexpected reason the state forum does turn out to be inadequate."[34]

When applying these factors, "the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'"[35] Courts must also be "mindful that any doubt as to whether a factor exists should be resolved against a stay."[36]

The first two factors are not at issue here. This is not an *in rem* proceeding and the state and federal forums are both in Las Vegas, Nevada. The remaining six factors are discussed below.

---

[30] *Id.*

[31] *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 819).

[32] *Id.* at 977–78 (quoting *Colorado River*, 424 U.S. at 818).

[33] *Id.* at 978–79.

[34] *Coopers & Lybrand v. Sun-Diamond Growers of Cal.*, 912 F.2d 1135, 1138 (9th Cir. 1990) (internal quotation marks and citation omitted); *R.R. Street*, 656 F.3d at 978 n.8.

[35] *R.R. Street*, 656 F.3d at 978 (quoting *Colorado River*, 424 U.S. at 818).

[36] *Id.* at 979 (internal quotation marks and citation omitted).

A.    **Piecemeal Litigation**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."[37]  "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance. … Instead, the case must raise a 'special concern about piecemeal litigation,' which can be remedied by staying or dismissing the federal proceeding."[38]  "Concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora … , and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of another.[39]

There is no bright-line test to determine if special concerns about piecemeal litigation exist.  Special concerns may arise if there is a substantial danger of inconsistent judgments, the substance of the case is out-of-the-ordinary, the state action is "vastly more comprehensive" than the federal action and can adjudicate the rights of many parties or the disposition of much property, or there is evidence of a strong federal policy against piecemeal litigation in favor of trying all the claims in state court.[40]

If identical issues are litigated simultaneously in two different fora, several problems arise.[41]  First, issue preclusion may bind the second court to decisions rendered in the first court.  *Id.*  Second, "a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first."[42]  Third, one court, unaware of what the other has done, could resolve an issue differently than the other

---

[37] *Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

[38] *R.R. Street*, 656 F.3d at 979 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20–21 (1983)).

[39] *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10–11 (1st Cir. 2003) (internal quotation marks and citations omitted).

[40] *U.S. v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990); *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989).

[41] *LaDuke*, 879 F.2d at 1560.

[42] *Id.*

1    and thereby create a conflict.[43]  "Thus, the results of simultaneous litigation of identical issues in

2    the state and federal courts may be both 'unseemly' and a 'grand waste' of the efforts of the

3    parties and the courts."[44]

4           Defendants argue that this case conflicts with clear federal policies against piecemeal

5    litigation because there would be duplicative discovery, depositions, and motion practice.  They

6    further argue that the concern over inefficient proceedings and wasted resources is heightened in

7    shareholder derivate actions because the real party in interest is the corporation who must

8    ultimately bear the costs of inefficiency instead of the individual plaintiffs themselves.

9    Defendants also assert that the complexity of the issues weighs in favor of a stay.  Finally,

10   Defendants rely on a Seventh Circuit case for the proposition that the removal statute, 14 U.S.C.

11   § 1441(b), "'evidence[s]' a 'policy against hearing a federal claim which is related to an ongoing

12   nonremovable state proceeding.'"[45]  Because the instant case does not present a federal claim and

13   the state case is nonremovable because some of the defendants are Nevada citizens, Defendants

14   contend this factor weighs heavily in their favor.

15          Defendants have sufficiently explained that the state and federal cases will necessarily

16   resolve most, if not all, of the same issues.  Moreover, at the hearing on the motion, Plaintiffs all

17   but conceded that the state case will resolve all of the issues in this case.  With the exception of

18   Chao, the defendants are the same.  Even if the claims for relief are not identical, the cases

19   similarly focus on whether Defendants breached their fiduciary duties concerning FCPA

20   compliance.  There is a substantial risk of duplicative discovery and motion practice and of

21   inconsistent rulings.[46]  Sharing discovery between the two cases does not necessarily cure the

22   problem because the permitted scope of discovery (and the resolution of other discovery issues)

23

24   ───────────────────

     [43] *Id.*

25   [44] *Id.*

26   [45] (Dkt. No. 116 at 24 (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 659–60 (7th Cir. 1988).)

27   [46] *See R.R. Street*, 656 F.3d at 979; *Turner v. Fushi Copperweld, Inc.*, No. 3:10-cv-00711, 2011
     WL 1750737 at *2 (D. Nev. May 6, 2011); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp.
28   2d 1160, 1172 (C.D. Cal. 2008).

may differ in the two courts.[47]  Although Plaintiffs' claims are not especially novel or complex, they arise entirely from state law.

The state and federal cases give rise to a special concern about piecemeal litigation.  This factor thus weighs in favor of a stay.

## B.   Order of Jurisdiction

This factor concerns the order in which the forums obtained jurisdiction.[48]  The dates of filing are not dispositive though.  "Instead of taking a mechanical approach, courts must apply this factor 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'"[49] Little weight should be given to the dates of filing when the state and federal actions have made the same relative progress.[50]  Here, very little substantive discovery has occurred in either case, and neither court has ruled on the merits of a motion to dismiss.[51]  Although this circumstance indicates that little weight should be given to the dates of filing, there is no other criteria by which to assess this factor.  The one-month head start in state court thus weighs slightly in favor of a stay.[52]

## C.   Source of Law

Nevada law governs the tort claims of breach of fiduciary duty, abuse of control, waste of corporate assets, and civil conspiracy.[53]  "[A]lthough the 'presence of federal-law issues must always be a major consideration weighing against surrender' [of jurisdiction], the 'presence of state-law issues may weigh in favor of that surrender' only 'in some rare circumstances.'"[54]  Even

---

[47] *See Day*, 862 F.2d at 659.

[48] *R.R. Street*, 656 F.3d at 980.

[49] *Id.* (quoting *Moses H. Cone*, 469 U.S. at 21.)

[50] 469 U.S. at 21.

[51] (*See* Dkt. No. 129.)

[52] *Giles v. ICG, Inc.*, 789 F. Supp. 2d 706, 714 (S.D.W.V. 2011); *Sea Prestigio, LLC v. M/Y TRITON*, 787 F. Supp. 2d 1116, 1119–20 (S.D. Cal. 2011).

[53] *See Kroll v. Incline Village Gen. Improvement Dist.*, 598 F. Supp. 2d 1118, 1123 (D. Nev. 2009).

[54] *Travelers*, 914 F.2d at 1370 (quoting *Moses H. Cone*, 460 U.S. at 26.)

if state law provides all of the rules of decision for a plaintiff's claims, this factor is typically neutral.[55]  However, this factor is "more important when it weighs in favor of federal jurisdiction."[56]

Plaintiffs argue that federal interests are implicated because, even though their success does not depend on proving FCPA violations, the claims are "related" to the FCPA.[57]  Defendants correctly counter that it is "exceedingly common" that federal law informs shareholder actions for breach of fiduciary duty, even when litigated in state court, but the duty itself is not governed by federal law.[58]  Moreover, Defendants argue that the FCPA does not include a private right of action.[59]  Although there is certainly a federal interest in interpreting the FCPA, this case does not appear to present an opportunity for meaningful interpretation.  Plaintiffs' claims depend on the FCPA only to the extent that its bookkeeping and records provisions arguably imposed a duty on the Board to implement internal controls.  Federal law may inform a state law cause of action without necessitating that the action be heard in federal court.  Moreover, Plaintiffs' claims for relief are not especially novel or complex and implicate relatively routine issues of state law.  Consequently, this factor tips towards a stay.

### D.  **Adequacy of State Court**

"A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants."[60]  However, "[l]ike source of law, this factor is more important when it weighs in favor of federal jurisdiction."[61]  The Court has no reason to believe that Nevada state court is an inadequate forum to protect the federal litigants'

---

[55] *R.R. Street*, 656 F.3d at 966.  *But see Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (viewing this factor in favor of a stay when all claims arise under state law); *Clark v. Lacy*, 376 F.3d 682, 687–88 (7th Cir. 2004) (same); *Walker v. MB Fin. Bank, N.A.*, No. C-13-03601, 2014 WL 173187 at *4 (N.D. Cal. Jan. 15, 2014) (same).

[56] *R.R. Street*, 656 F.3d at 981 (internal quotation marks and citation omitted).

[57] (Dkt. No. 120 at 22–23.)

[58] (Dkt. No. 116 at 26.)

[59] (*Id.*)

[60] *R.R. Street*, 656 F.3d at 981.

[61] *Id.* (internal quotation marks and citation omitted).

1    rights.  Indeed, at the hearing on the motion, Plaintiffs admitted that the state court is not an

2    inadequate forum.  This factor is thus either neutral or slightly favors a stay.[62]

3         **E.**    <u>**Forum Shopping**</u>

4         Forum shopping refers to "[t]he practice of choosing the most favorable jurisdiction or

5    court in which a claim might be heard."[63]  "To avoid forum shopping, courts may consider 'the

6    vexatious or reactive nature of either the federal or the state litigation.'"[64]

7         Although Defendants allege that if this Court were to retain jurisdiction, it would

8    encourage "impermissible forum shopping,"[65] they do not explain what advantages Plaintiffs

9    obtain by proceeding in federal court.  Parties engage in forum shopping to gain some real or

10   perceived benefit, for example if they believe the evidence or discovery rules are in their favor or

11   to deprive a plaintiff of a chosen forum.  Here, there is no indication that Plaintiffs filed this

12   action in reaction to the state case or that Plaintiffs brought suit in federal court to obtain

13   favorable procedural or evidentiary rules.  This factor is thus neutral.  But the import of this factor

14   is relatively low, as the Court "cannot say that forum shopping weighs significantly for or against

15   jurisdiction."[66]

16        **F.**    <u>**Parallel Suits**</u>

17        "The final factor … is whether the state court proceeding sufficiently parallels the federal

18   proceeding."[67]  Exact parallelism is not required, but the actions must be "substantially similar."

19   *Id.*  "The existence of a substantial doubt as to whether the state proceedings will resolve the

20   federal action precludes a *Colorado River* stay or dismissal." *Id.* (internal quotation marks and

21   citations omitted).  At oral argument, Plaintiffs admitted that the cases are nearly identical.  This

22   factor weighs strongly in Defendants' favor.

---

[62] *See id.*

[63] B<span style="font-variant:small-caps">LACK'S</span> L<span style="font-variant:small-caps">AW</span> D<span style="font-variant:small-caps">ICTIONARY</span> 726 (9th ed. 2009).

[64] *R.R. Street*, 656 F.3d at 981 (quoting *Moses H. Cone*, 460 U.S. at 17 n.20).

[65] (Dkt. No. 116 at 25.)

[66] *R.R. Street*, 656 F.3d at 982.

[67] *Id.*

Considering all of the factors, staying the case under *Colorado River* is appropriate.  The cases are parallel; there is a substantial risk of piecemeal litigation and inconsistent verdicts; the state case was filed first; and the state court can adequately protect the parties' interests.  The other factors are neutral and carry little weight in the circumstances of this case.[68]

## III.   CONCLUSION

Based on the foregoing, the Court hereby ORDERS:

1. Defendants' Motion to Dismiss (Dkt. No. 116) is DENIED without prejudice.

2. This case is stayed under the *Colorado River* doctrine.  The parties shall file a joint status report within four months of the entry of this Order.  The report shall include the progress of the *Kohanim* case in state court.

DATED this 11th day of April, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[68] *See id.* at 981–82 (staying the federal case even though the factors of source of law, adequacy of state court, and forum shopping were neutral).